IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| XL SPECIALTY INSURANCE COMPANY, | * | |
| Plaintiff, | * | |
| v. | | Case No.: GJH-18-2497 |
| | * | |
| ERIE INSURANCE EXCHANGE, | | |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This Declaratory Judgment action arises out of an insurance coverage dispute related to a significant automobile accident that occurred on January 14, 2016. Pending before the Court are the parties' cross Motions for Summary Judgment. ECF Nos. 18 & 20. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant/Counter-Plaintiff Erie Insurance Exchange's Cross Motion for Summary Judgment, ECF No. 18, will be granted, and Plaintiff/Counter-Defendant XL Specialty Insurance Company's Cross Motion for Summary Judgment, ECF No. 20, will be denied.

**I.   STANDARD OF REVIEW**

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Francis v. Booz, Allen & Hamilton, Inc.,* 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183 (4th Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986)). A dispute of material fact is only "genuine" if

1

sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson,* 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). The Court may rely on only facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson,* 477 U.S. at 255.

Cross-motions for summary judgment require that the Court consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). "The Court must deny both motions if it finds there is a genuine issue of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Wallace v. Paulos*, 2009 WL 3216622 at *4 (D. Md. Sept. 29, 2009) (citation omitted).

## II.     DISCUSSION

On January 14, 2016, Juan Sanchez, an employee of R&R Contracting Utilities Inc. (R&R), ECF No. 18-11 at 3, was operating a 2006 Chevrolet Silverado (the Vehicle) when he ran through a red light and collided with a vehicle operated by Angela Jefferson. ECF No. 18-5. The accident involved a total of nine vehicles and resulted in fatal injuries to Jefferson and injuries to several drivers and occupants of other vehicles as well as property damage claims. *Id.* The Vehicle was owned by IPR Northeast, LLC (IPR). ECF No. 18-4 ¶ 11.

R&R is a small business that provides labor to other companies in need of additional manpower to perform specific work. ECF No. 18-9 at 16:16–17:1, 28:14–29:21. IPR is one of the general contractors for whom R&R provides workers. ECF No. 18-6 at 2. At the time of the accident, Sanchez performed work on R&R's behalf exclusively for IPR. ECF No 18-6 at 2; ECF No. 18-10 at 2; ECF No. 18-11 at 3.

In February 2015, Sanchez became a "project engineer," a position that required him to travel between multiple IPR jobsites. ECF No. 18-6 at 2; ECF No. 18-13 at 12:5–14; ECF No. 18-8 at 40:11–18; *id.* at 194:8–11. As a result, he received authorization and began driving an IPR vehicle. ECF No. 18-7 at 41:1–5. Whenever he drove an IPR vehicle, he drove the 2006 Chevrolet Silverado—the Vehicle that he was driving at the time of the 2016 accident. ECF No. 18-8 at 196:2. Although the Vehicle was assigned to others as well, it was the only IPR vehicle that Sanchez drove. ECF No. 18-7 at 21:14–22:11, 34:5–15. There were two different pickup trucks, including the Vehicle, that were primarily used for the contract Sanchez managed, and if IPR needed to supply a crew foreman with a vehicle, then the Vehicle Sanchez used could be "reallocated to a different person as the operations manager saw fit." *Id.* at 34:5–15. Sanchez did not use the Vehicle for "personal purposes" except that he could drive the Vehicle home as a convenience if he was required to work late; he would then return the Vehicle to the IPR office the next morning. ECF No. 18-8 at 61:1–18; 195:19–196:1. Sanchez drove the Vehicle home a "few days a week" and sometimes on the weekend. *Id.* at 233:6–16.

On January 14, 2016, Sanchez was driving the Vehicle to an IPR jobsite when the accident occurred. *Id.* at 60:2–22. The Vehicle was insured under a policy issued to IPR by Plaintiff XL Specialty Insurance Company (XL Specialty). ECF No. 18-5 at 2. Separately, Defendant Erie Insurance Exchange (Erie) issued an insurance policy to Sanchez's employer,

3

R&R. The Erie policy provides primary insurance for "any owned auto." ECF No. 18-14 at 8. But it provides only excess insurance for autos it insures that are not owned. *Id.* at 12. Pursuant to the Erie Policy, owned autos include:

> b. 2) any auto not owned by, furnished or available for the regular use\* of, and while driven by:
>
>     a) **you**;
>     b) **your** active partner and spouse residing in the same household;
>     c) **your** active executive officer and spouse residing in the same household; or
>     d) if **you** are a joint venture, your active member and spouse residing in the same household.
>
> \* **Autos** hired, rented or borrowed for more than 45 consecutive days shall be considered furnished or available for regular use.

*Id.* at 8 (emphasis in original). The policy's definition section states that "words have a special meaning when they appear in bold type." *Id.* at 6. The phrase "furnished or available for the regular use" is not bolded throughout the policy and is not included in the policy's definition section. *See id.* The parties agree that this definition of an "owned auto" is the only one that is potentially applicable to the Vehicle. ECF No. 18-1 at 14; ECF No. 20-1 at 10.

In the wake of the accident, Plaintiff XL Specialty paid most of the resulting insurance claims and now seeks a declaration that Defendant Erie was a co-primary insurer and similarly required to pay those claims. ECF No. 1. Erie filed a counterclaim requesting a declaration that if Erie is required to provide any coverage for the claims resulting from the January 14, 2016 accident, its coverage is excess to the coverage provided by XL Specialty. ECF No. 8. Because the Erie policy provides primary insurance for "any owned auto" and the material facts related to the Vehicle are not in dispute, the parties' cross motions turn on the meaning of this phrase. If

the Vehicle qualifies as an owned auto, XL Specialty is entitled to summary judgment; if the Vehicle is not an owned auto, then Erie is entitled to summary judgment.

When an insurance policy's relevant terms are unambiguous, the meaning of those terms is a question of law to be determined by the court. *Cole v. State Farm Mutual Ins. Co.*, 359 Md. 298, 305 (2000); *Bausch & Lomb v. Utica Mut. Ins. Co.,* 330 Md. 758, 779 (1993). The phrase, "furnished or available for the regular use" is unambiguous. *See Allstate v. Humphrey,* 246 Md. 492, 496 (1967); *Winterwerp v. Allstate Ins. Co.,* 277 Md. 714 (1976). Regular means "steady or uniform in course," "the antonym of 'casual' or 'occasional,'" "characterized by the presence or operation of a definite principle," "marked or distinguished by steadiness or uniformity in action, procedure, or occurrence," "habitually or customarily used," or "recurring." *Humphrey*, 246 Md. at 497.

*Winterwerp v. Allstate Ins. Co.* is instructive on this point. There, a volunteer fireman was driving a firefighting vehicle owned by the fire department when he was involved in an accident. 277 Md. at 716. The insurance company responsible for the firefighter's personal motor vehicle policy argued that it was not responsible for coverage while he drove the firefighting vehicle because it was a non-owned vehicle that was furnished or available for his regular use. *Id.* at 719. The firefighter had only driven the particular vehicle ten times in a two-year period, but he had driven one of the six vehicles used in emergencies on seventy trips during that two-year period. *Id.* The Maryland Court of Appeals described it as well-settled that a vehicle may be considered furnished or available for regular use even if "it is only one of a group of vehicles furnished or made available for the regular use of the named insured." *Id.* The court concluded that "there was nothing temporary or limited about the insured's connection with the firefighting vehicles" because "he had steadily and continuously participated" as a volunteer. *Id.* at 720. The court

5

noted that "it was not only unnecessary for the insured to seek permission to drive one of the vehicles required in a particular instance, but it was his duty to perform that task whenever he arrived in time to do so." *Id.* Because he drove a firefighting vehicle on seventy occasions, "an experience rate" that could be "fairly described as steady or uniform in course," the court held that the vehicle was furnished or available for regular use and the insurance company was not obligated to provide coverage. *Id.* at 720–21.

So too here. Sanchez had steady and continuous access to the Vehicle for about a year. Further, "it was not only unnecessary for," Sanchez "to seek permission to drive one of the vehicles required in a particular instance, but it was his duty to perform that task whenever he" was required to travel between multiple jobsites. *Id.* at 720. Although there were two vehicles available for use on Sanchez's contract, it is well-settled that a vehicle may be considered furnished or available for regular use even if "it is only one of a group of vehicles furnished or made available for the regular use of the named insured." *Id.* at 719. Additionally, while Sanchez did not use the Vehicle for "personal purposes," he could drive the Vehicle home without asking for permission and he did so a "few days a week" and sometimes on the weekend. ECF No. 18-8 at 61:1–18; *id.* at 195:19–196:1; *id.* at 233:6–16. Because the Vehicle was an "furnished or available for the regular use of" Sanchez, and the parties agree that none of the other definitions of "owned autos apply" to the Vehicle, it was a non-owned auto pursuant to the Erie Policy.

XL Specialty's argument that because Sanchez did not borrow the Vehicle "for more than 45 consecutive days" it was not available for his "regular use" fails. Contrary to XL Specialty's position, the footnote stating that "autos hired, rented or borrowed for more than 45 consecutive days shall be considered furnished or available for regular use" is clearly an example not a limitation. The policy's separate definition section states that "words have a special meaning

6

when they appear in bold type," but the phrase "regular use" is not defined in that section nor bolded throughout the policy. *Id.* at 6. Therefore, the footnote does not provide an exclusive definition for that term, and it does not support the argument that unless an auto is hired, rented or borrowed for more than 45 consecutive days, it is not furnished or available for regular use.

Based on the undisputed facts and well-established Maryland law addressing the phrase "furnished or available for regular use"—a phrase that is common to insurance policies—the Vehicle was "furnished or available for" Juan Sanchez's regular use. As such, it was not an owned auto and if Erie was required to provide any coverage for the claims resulting from the January 14, 2016, it was not as a co-primary insurer. In sum, Defendant Erie is entitled to summary judgment, and Plaintiff XL Specialty's cross-motion for summary judgment must be denied.[1]

## III. CONCLUSION

For the foregoing reasons, Defendant/Counter-Plaintiff Erie's Cross Motion for Summary Judgment is granted, and Plaintiff/Counter-Defendant XL Specialty's Cross Motion for Summary Judgment is denied. A separate Order shall issue.

Date: <u>July 3, 2019</u>　　　　　　　　　　　　　　　　　　__/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[1] Although Defendant Erie's prayer for relief requests a declaration that Plaintiff XL Specialty had a duty to defend and indemnify R&R against any claims arising out of the underlying accident and requests reasonable attorney's fees and costs, ECF No. 8 at 7, Erie's motion for summary judgment papers do not support such a declaration or award, *see* ECF Nos. 18-1 & 21. First, Defendant Erie concedes that it is not asking this Court "to declare whether Erie had a duty to defend or indemnify R&R, Sanchez, or IPR." ECF No. 21 at 1. Rather, Defendant Erie claims the Court "is being asked to declare that, if [Erie] had such a duty, it was excess to the duty to defend and indemnify that XL Specialty owed to R&R, Sanchez, and IPR." *Id.* at 1; *see also id.* at 7 ("Erie's duty to defend R&R (or IPR or Sanchez) is not at issue in this case."). Further, there is a pending state court action that will resolve the duty-to-defend issue. ECF No. 20-7. Finally, Defendant Erie's papers do not explain why Erie is entitled to an award for reasonable attorneys' fees and costs. For these reasons, the accompanying order does not declare that XL Specialty had a duty to defend and indemnify R&R against any claims arising out of the underlying accident or that Erie is entitled to the reasonable attorneys' fees and costs incurred for defending R&R in the underlying litigation.